UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GANIYU O. OBANIGBA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| MICHAEL CHERTOFF, Secretary of | ) Case No. 4:07CV1192 RWS |
| Department of Homeland Security; | ) |
| | ) |
| and | ) |
| | ) |
| MICHAEL JAROMIN, District Director, | ) |
| U.S. Citizenship and Immigration | ) |
| Services, | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM AND ORDER

Petitioner Ganiyu O. Obanigba is a lawful resident of the United States who has filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS"). Obanigba's application has been pending since November 23, 2004. Obanigba has been interviewed by the USCIS. Because a background check on Obanigba has not been completed the USCIS has not yet adjudicated his application. Obanigba has filed this petition requesting me to assume jurisdiction over the matter and to approve his application for citizenship. In the alternative, Obanigba seeks an order directing the USCIS to expedite the completion of his background check. Defendants have filed a motion asking that Obanigba's case be remanded to the USCIS to complete the background check necessary for Obanigba to prove his eligibility for naturalization.

I will remand the matter to the USCIS with instructions to make a determination as

expeditiously as possible after receiving Obanigba's completed criminal background check from the FBI.

*Background*

The naturalization process begins when the applicant files a Form N-400, "Application for Naturalization." 8 U.S.C. § 1445(a); 8 C.F.R. § 334.2. The USCIS must then conduct a background investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. At a minimum, the background investigation includes "a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application." 8 C.FR. § 335.1. The USCIS relies primarily on three background check mechanisms: (i) the Interagency Border Inspection System (IBIS) name check, (ii) the FBI fingerprint check, and (iii) the FBI name check. Typically following the conclusion of the background check, the applicant is interviewed by a USCIS examiner. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2. During the examination the applicant is tested to determine if the applicant has the required level of English proficiency and knowledge of the history and government of the United States. 8 U.S.C. § 1423(a); 8 C.F.R. § 312.1; 8 C.F.R. § 312.2.

The examination by the USCIS examiner should occur only after the USCIS receives from the FBI a "definitive response" that a full criminal background check of the applicant has been completed. 8 C.F.R. § 335.2. Sometimes, as in the present case, the USCIS will conduct the examination of an applicant before a full criminal background check is completed in an attempt to expedite the naturalization process.

Ultimately, the USCIS examiner is authorized to make a determination to grant or deny

the application.  8 U.S.C. § 1446(d); 8 C.F.R. § 335.3.  This determination should occur within the 120 days following the initial examination of the applicant.  8 C.F.R. § 335.3.  However, when the examination of the applicant occurs before the background check is completed, 120 days may expire without the background check being finalized.  This creates a situation where an applicant can file for review by a district court under 8 U.S.C. 1447(b).

Petitioner Obanigba is citizen of Nigeria.  He has been a lawful permanent resident of the United States since 1992.  On November 23, 2004, he filed his Form N-400 application for naturalization with the USCIS.  Approximately six months later, on May 2, 2005, Obanigba was interviewed by a USCIS officer.  Obanigba apparently passed an English language proficiency test and demonstrated his knowledge of United States history and government.  Currently, the background investigation is no complete and has been pending for over three years.  The USCIS maintains that it is unable to adjudicate Obanigba's application until it receives the results of Obanigba's background check.

### *Legal standard*

Federal jurisdiction is proper only if a case comes within an express congressional grant of jurisdiction.  Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley, 112 F.3d 1332, 1334 (8th Cir. 1997). Congress has expressly limited the jurisdiction of district courts in the naturalization process.  "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."  8 U.S.C. 1421(a).  Furthermore, "[j]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'"  INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (quoting Ins v. Abudu, 485 U.S. 94, 110 (1988)); See

also Palomino v. Ashcroft, 354 F.3d 942, 944 (8th Cir. 2004) ("some deference is appropriate in the immigration context because sensitive political decisions with important diplomatic repercussions may be involved").

One exception to the district courts' limited jurisdiction in the naturalization application process is found in 8 U.S.C. § 1447(b).

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

§ 1447(b).

*Discussion*

In the normal course of events the processing of a naturalization application contemplates that the applicant's background check is completed before the USCIS examines the applicant to determine the applicant's English language proficiency and knowledge of United States history and government. Section 1447(b) gives a federal district court jurisdiction to determine whether to grant or deny an application that has been neither granted or denied by the USCIS within a 120 day period after the examination. The statute signals that any delay of more than 120 days after the USCIS has received all of the information required for an immigration decision is unreasonable. By invoking section 1447(b), an applicant is asking a district court to independently consider the naturalization application which should include a completed background check, the applicant's examination by the USCIS, and any other information in the record to determine the naturalization application. In other words, the all of the information

required by the immigration laws and regulations should have been completely gathered and the district court is asked to render a decision that the USCIS has for some reason not been able to make within a 120 day period.

This scheme-work is effective because both the court and the USCIS are in the same position, they both have all of the information required by law to make an informed decision on a naturalization application.

By its terms section 1447(b) grants jurisdiction to the federal courts only under the limited circumstance that the USCIS has completed its examination of the applicant. If no examination has taken place, an applicant cannot invoke judicial intervention to protest the length of time it has taken for his naturalization application to be determined by the USCIS.

The present case raises the issue of whether a federal court should determine a naturalization application in the absence of required background checks. The USCIS, apparently to help expedite its backlog of immigration applications, began to conduct examinations of naturalization applicants before the background checks were completed. In these cases, even though an applicant successfully completed the examination, the lack of a completed background check by the FBI prevented the USCIS from approving a naturalization application within 120 days after the examination.

The unintended consequence of this action by the USCIS was a tide of lawsuits seeking a district judge to make a naturalization decision under section 1447(b). Understandably immigration applicants, frustrated by delays in a decision on their applications, seize upon the USCIS's premature decision to hold an examination as a basis to seek judicial intervention.

In these anomalous situations, however, a federal court does not have the benefit of a

completed immigration file as it would have had if the proper procedures were followed and the USCIS waited to examine the applicant until after the background check was completed. In these situations, the court is in no better position than the USCIS to make a determination of the application due to the lack of a key piece of information in the immigration process, the background check information.

Once a party has invoked federal jurisdiction under section 1447(b), a district court has two options. It may hold a hearing and decide the matter, or it may remand the matter with appropriate instructions to the USCIS for determination.

*Hearing or Remand*

"Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002). The executive branch is generally given great deference in immigration matters. More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety. El-Daour v. Chertoff, 417 F. Supp.2d 679, 684 (E.D. Va. 2005). To conduct a hearing without the completion of a background check "would contravene Congress's intent that an FBI background is to be completed prior to the adjudication of every naturalization application." Essa v. United States Citizenship & Immigration Service, No. 05-1449, 2005 WL 3440827, at *8 (D. Minn. Dec. 14, 2005).

As a result, I find that it is not appropriate for me to make a determination of Obanigba's naturalization application. Instead, I will remand this matter to the USCIS for determination of

Obanigba's application.

Obanigba requests that if the case is remanded to the USCIS, that agency should be ordered to either approve Obanigba's application or to given a deadline to resolve the background checks.

For many of the same reasons why I am not in an advantageous position to decide the matter, the USCIS cannot make a determination without the assurances of a completed background check. More importantly, Congress has explicitly forbidden the USCIS from using any of its funds for completing the adjudication of an application for naturalization before a full criminal background check is completed by the FBI. Act of Nov. 26, 1997, Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (appropriating money for the Departments of Commerce, Justice, and State).[1] Because the FBI has not yet completed its background check of Obanigba, the USCIS cannot currently make a determination of Obanigba's application. Essa, 2005 U.S. WL 3440827, at * 6-7.

I also will not order the USCIS to use any and all procedures available to expedite Obanigba's background check. Only the FBI and the USCIS are in a position to know what resources are available to conduct the background checks, and whether an expedited background check is feasible or efficient. See Sze v. INS, No. C-97-0569, 1997 U.S. Dist. LEXIS 10822, at *26 (N.D. Cal. July 24, 1997) ("[T]he agency is in a superior position to view its projects as a whole and to optimally allocate its resources."). This fact, combined with the deference given the

---

[1] The statute provides that "during fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated . . . shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed." Id.

executive branch in immigration matters, leads me to conclude that the decision whether to expedite Obanigba's background check is an issue more appropriately left to the USCIS.

I understand Obanigba's desire to become an American citizen, and sympathize with the delay that he must endure while the application process is under way. On the other hand, I am not in a position to give him the relief he has requested. "Unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world." <u>Alkenani v. Barrows</u>, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Remand [#3] is **GRANTED** with instructions that the USCIS make a determination as expeditiously as possible after the completion of Obanigba's criminal background investigation.

_/s/ Rodney W. Sippel_
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2008.